***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman, and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 11 January 2000 as:
 STIPULATIONS
1. At the time of the injury by accident on 19 August 1998, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 19 August 1998, plaintiff was employed by defendant-employer Raytheon.
3. On 19 August 1998, Liberty Mutual Insurance Company was on the risk for work related injuries sustained by employees of defendant-employer.
4. On 19 August 1998, plaintiff's average weekly wage was $445.60.
5. On 19 August 1998, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
6. All conditions precedent and statutes of limitations deadlines, pursuant to G.S. § 97-22, G.S. § 97-23, and G.S. § 97-24, have been met by plaintiff.
7. In addition, the parties stipulated into evidence a packet of documents from plaintiff's personnel file, and a packet of ninety-eight (98) pages of medical records and reports which were submitted after the hearing.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was sixty-four (64) years old at the time of the hearing before the Deputy Commissioner on 11 January 2000, with her date of birth being 5 December 1935. Plaintiff began working for defendant-employer in May 1996. Prior to that time, plaintiff had worked in the technical library at the Cherry Point Marine Corps Air Station for approximately six years for other contractors. When defendant-employer was awarded the contract in 1996, plaintiff was hired by the new company.
2. Plaintiff's job duties for defendant-employer did not change significantly from her duties with previous employers. Plaintiff continued to work with drawing files, and would provide copies of blueprints to mechanics and engineers to assist with work on aircraft at the base. In addition to these duties, plaintiff was trained by defendant-employer to scan and process aperture cards in order to convert them to digital format.
3. On 23 May 1998, plaintiff sustained an injury to her knees when she tripped over a fire hose at her son's home and fell. On the date of her injury, plaintiff was examined at the emergency room, where it was noted that she had an abrasion on her left knee and contusions on her right knee. Plaintiff also received treatment for this injury from Dr. Carl Hiller, an orthopedic surgeon. Following an examination, Dr. Hiller noted swelling of the knee as well generalized edema of both legs. X-rays revealed mild degenerative changes. Dr. Hiller initially diagnosed plaintiff as having hearthosis, or blood in the knee joint, with a possible anterior cruciate ligament tear. However, Dr. Hiller later ruled out an anterior cruciate ligament tear because there were no physical findings to support that diagnosis. Instead, Dr. Hiller opined that the bleeding was most likely the result of the bruising and the blood-thinning medication plaintiff was taking at that time.
4. On 4 June 1998, plaintiff returned to Dr. Hiller and indicated that her knee was improving, with the swelling having subsided. Another appointment was scheduled for 16 June 1998, however, because her condition had completely resolved, plaintiff did not attend that appointment. Plaintiff missed some work as a result of her injury on 23 May 1998 but returned to work for defendant-employer in June 1998, and continued working until the time of the incident giving rise to this claim. Plaintiff's testimony in this regard is accepted as credible by the Full Commission.
5. On 19 August 1998, plaintiff sustained an admittedly compensable injury by accident when her shoe became caught in a crack as she was walking through the hangar area, causing her to fall forward onto her hands and knees. As a result, plaintiff sustained injuries to her knees and her right wrist. Following this incident, plaintiff was taken by ambulance to the base hospital. An examination revealed a two-inch by one-inch abrasion on her left knee, contusions to her right knee, and mild tenderness of her right wrist. X-rays were negative, except for symmetrical narrowing of the joint space in her knees. Plaintiff's abrasions were cleaned; she was advised to follow-up with her family doctor if needed, and was released to return to work.
6. Despite of the lack of an initial definitive diagnosis following the 19 August 1998 incident, plaintiff continued to experience symptoms, primarily with her right knee. Plaintiff reported these ongoing symptoms to her family physician, Dr. William H. Bobbitt, III. On 1 October 1998, Dr. Bobbitt noted these symptoms, and that plaintiff had reported swelling in her right knee, and pain when standing up and with walking. Plaintiff also reported experiencing difficulty with sleeping due to her knee discomfort. Dr. Bobbitt continued providing treatment for plaintiff's ongoing symptoms through 15 February 1999, when he referred her to Dr. Hiller.
7. Dr. Hiller first examined plaintiff for her 19 August 1998 injury on 15 February 1999, and noted swelling of the knee as well generalized edema of both legs. Dr. Hiller ordered x-rays, which revealed a discernable loss of the medial compartment in plaintiff's knee. Dr. Hiller noted that these findings were different from those revealed by the x-rays taken at the Naval hospital on 19 August 1998, which showed only a slight narrowing of the joint space at that time. Dr. Hiller began a course of conservative treatment that included medications and physical therapy.
8. On 22 June 1999, and again on 27 July 1999, Dr. Hiller recommended that plaintiff undergo a total knee arthroplasty. Because of other health concerns, Dr. Hiller conferred with Dr. Bobbitt as to whether such procedure was possible. Dr. Bobbitt indicated that plaintiff had an average surgical risk, and that the recommended procedure would be reasonable. Thereafter, on 8 September 1999, Dr. Hiller's office sent the appropriate documents to defendants requesting approval for the surgery. Dr. Hiller concluded that the 19 August 1998 injury caused an exacerbation in plaintiff's condition such that plaintiff required surgery. Defendants requested a second opinion, and plaintiff was referred to Dr. Richard A. Huberman, who is also an orthopedic surgeon.
9. Dr. Huberman examined plaintiff on 17 December 1999. Following his examination, Dr. Huberman concluded that plaintiff could have a torn medial meniscus, and recommended further diagnostic testing, including an MRI, and did not recommend the surgical procedure proposed by Dr. Hiller at that time. Dr. Huberman opined that plaintiff's right knee condition was causally related to, and was aggravated by her 19 August 1998 admittedly compensable injury.
10. In this matter, an issue has been raised regarding Dr. Huberman's understanding of plaintiff's medical history, particularly as to her May 1998 knee injury, when his opinions were given. Defendants contend that the condition described to Dr. Huberman by plaintiff was related to the May 1998 injury, whereas plaintiff contends that Dr. Huberman had full knowledge of plaintiff's medical history when his causation opinions were rendered. During his deposition, Dr. Huberman opined that it was possible that the condition for which he examined plaintiff could have been caused by the May 1998 incident, or the 19 August 1998 injury.
11. Because of Dr. Hiller's extensive history in treating plaintiff, as opposed to Dr. Huberman who evaluated plaintiff only once, the Full Commission gives greater weight to the opinions of Dr. Hiller on causation, and the need for plaintiff to undergo the total knee arthroplasty
12. On 31 August 2000, plaintiff was terminated by defendant-employer while her hearing request seeking authorization for the surgery recommended by Dr. Hiller was pending before the Commission. The reasons stated by defendant-employer for plaintiff's termination were that she was unable to retain her training, and that she was unable to perform any duties associated with her position in the technical library on her own. However, plaintiff's evaluations for 1997 through 2000 indicate that she had met expectations in each area of her job, including her knowledge and skills, her quality awareness, workmanship, and the quantity of the work performed. Additionally, plaintiff had received a favorable annual review as recently as June 2000. Therefore, based upon the credible evidence of record, the Full Commission gives little weight to defendants' assertions regarding plaintiff's termination.
13. Defendants have failed to produce evidence upon which to find that plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. Accordingly, plaintiff did not constructively refuse suitable employment.
14. Plaintiff's knee condition for which she was examined by Dr. Hiller and Dr. Huberman in 1999 was caused by her admittedly compensable injury by accident on 19 August 1999. The credible medical evidence of record supports a finding that plaintiff would benefit from the surgical procedure recommended by Dr. Hiller.
15. As the result of her 19 August 1999 injury by accident, plaintiff has been unable to earn any wages in any employment for the period of 31 August 2000 through the present and continuing.
16. On 19 August 1998, plaintiff's average weekly wage was $445.60, yielding a compensation rate of $297.07.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 19 August 1998, plaintiff's average weekly wage was $445.60, yielding a compensation rate of $297.07. G.S. § 97-2(5).
2. On 19 August 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. G.S. § 97-2(6). The knee condition for which plaintiff was examined by Dr. Hiller and Dr. Huberman in 1999 was caused by her admittedly compensable injury by accident on 19 August 1999. Id.
3. Defendants have failed to produce evidence upon which to find that plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. Seagraves v.Austin Company of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). Accordingly, plaintiff did not constructively refuse suitable employment. G.S. § 97-32.
4. As the result of her19 August 1999 injury by accident, plaintiff is entitled to have defendants pay ongoing total disability compensation at the rate of $297.07 per week for the period of 31 August 2000 through the present and continuing until such time as she returns to work, or until further order of the Commission. G.S. § 97-29.
5. As the result of her19 August 1999 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred, or to be incurred, including the expenses associated with the surgical procedure recommended by Dr. Hiller. G.S. § 97-25; G.S. § 97-25.1.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $297.07 per week for the period of 31 August 2000 through the present and continuing until such time as she returns to work, or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred, or to be incurred by plaintiff as the result of her 19 August 1999 injury by accident, including the expenses associated with the surgical procedure recommended by Dr. Hiller.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff, and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
4. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER